UNITED STATES *v.* AMERICAN FRIENDS
SERVICE COMMITTEE ET AL.

No. 73-1791. Decided October 29, 1974

PER CURIAM.

Appellee American Friends Service Committee (employer) is a religious corporation, whose principal operation is philanthropic work and many of whose employees are conscientious objectors to war, performing alternative civilian service. Appellees Lorraine Cleveland and Leonard Cadwallader (employees) are present or past employees of the employer.

Because of their religious beliefs, the employees in 1969 requested their employer to cease withholding 51.6%[1]

---

[1] This figure represents their estimate of the percentage of the federal budget which is military related.

of the portion of their wages required to be withheld under § 3402 of the Internal Revenue Code.[2] Although they conceded that these amounts were legally due to the Government, they wished to bear witness to their beliefs by reporting the amounts as taxes owed on their annual income tax returns but refusing to pay such amounts. They would thus compel the Government to levy in order to collect the taxes.

In response to the employees' request, the employer ceased withholding from the employees' salaries 51.6% of that amount required to be withheld under § 3402, although it continued to pay the full amount required to be withheld under that provision to the Government. It then brought a suit for refund of the amount it had paid to the Government but not actually withheld from salaries. The appellee employees joined the employer's action, seeking on their own behalf an injunction barring the United States' enforcement of § 3402 against the employer with regard to 51.6% of the required withholding. They argued that, even though they were liable for these amounts, § 3402 as applied to this portion of their wages was unconstitutional as a deprivation of their right to free exercise of religion under the First Amendment since it did not allow them to bear witness to their beliefs by refusing to voluntarily pay a portion of their taxes.

The District Court ordered a refund of amounts tendered by the employer but not withheld by it, since the Government had also levied on the employees for these taxes and hence had received a double payment of the

---

[2] 26 U. S. C. § 3402. The provision provides in part that "[e]very employer making payment of wages shall deduct and withhold upon such wages (except as otherwise provided in this section) a tax determined in accordance with the following tables. . . ." There is no dispute as to the applicability of the provision to the employees' wages.

amount due. The Government does not contest this portion of the District Court's judgment.[3]

The District Court also enjoined the United States from enforcing § 3402 against the employer with respect to 51.6% of the required withholding from the employees' salaries, holding that § 3402 as applied to this amount constituted an unconstitutional abridgment of the right to free exercise of religion. The United States appeals this portion of the judgment.[4] The District Court's opinion and order were entered before this Court handed down its opinions in *Bob Jones University* v. *Simon*, 416 U. S. 725 (1974), and *Commissioner* v. *"Americans United" Inc.*, 416 U. S. 752 (1974).

The Anti-Injunction Act, 26 U. S. C. § 7421 (a), provides that no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."[5] In *Bob Jones, supra,* we rejected an appeal to create judicial exceptions to § 7421 (a) other than that carved out in *Enochs* v. *Williams Packing & Navigation Co., Inc.*, 370 U. S. 1 (1962). We noted that *Williams Packing* was

---

[3] Jurisdictional Statement 7 n. 3. We express no opinion as to the merits of the refund claim. The lower court's opinion is reported at 368 F. Supp. 1176.

[4] Since the District Court held that § 3402 was unconstitutional as applied to the facts of this case, this Court has jurisdiction over the appeal under 28 U. S. C. § 1252. *Fleming* v. *Rhodes*, 331 U. S. 100, 102–103 (1947); *United States* v. *Christian Echoes Ministry*, 404 U. S. 561, 563 (1972).

[5] See Act of Mar. 2, 1867, § 10, 14 Stat. 475; Rev. Stat. § 3224; Int. Rev. Code of 1939 § 3653. Section 7421 (a) of the Code states: "Except as provided in sections 6212 (a) and (c), 6213 (a), and 7426 (a) and (b)(1), no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed."

the "capstone" of judicial construction of the Act and spelled an end to cyclical departures from the Act's plain meaning. *Bob Jones University* v. *Simon, supra,* at 742. In *"Americans United" Inc., supra,* we stated that a pre-enforcement injunction against the assessment or collection of taxes could be granted only if it were clear that the Government could in no circumstances ultimately prevail on the merits, and that equity jurisdiction existed. "Unless both conditions are met, a suit for preventive injunctive relief must be dismissed." 416 U. S., at 758.

The employees concede, and the District Court found, that § 3402 withholding is a method of collection of taxes within the meaning of § 7421 (a).[6] They further concede, as they must, that they are not within the *Williams Packing* exception; far from the Government's defense in a refund suit being meritless, the employees concede that the Government would undoubtedly prevail in such a refund action.

They contend, however, that since the District Court enjoined only one method of collection, and the Government is still free to assess and levy their taxes when due, the Act does not apply. But this contention ignores the plain wording of the Act which proscribes any "suit for the purpose of restraining the assessment or collection of any tax." The District Court's injunction against the collection of the tax by withholding enjoins the collection of the tax, and is therefore contrary to the express language of the Anti-Injunction Act.

---

[6] The legislative history of this provision enacted in 1943 indicates that its purpose in part was to assist the Government in securing needed revenue without having to resort to levy. H. R. Rep. No. 268, 78th Cong., 1st Sess., 1–2 (1943); S. Rep. No. 221, 78th Cong., 1st Sess., 1 (1943). The District Court noted that relegating the Government to levying after returns were filed would be an inefficient process. 368 F. Supp., at 1180.

The employees also argue that the Anti-Injunction Act is inapplicable because they have no alternative legal remedy available. They contend that a refund suit would be an inadequate remedy, in view of the concession on their part that the taxes are due, since they would surely lose such an action. But this ignores the fact that inadequacy of available remedies goes only to the existence of irreparable injury, an essential prerequisite for traditional equity jurisdiction, but only one of the *two* parts of the *Williams Packing* test. *Commissioner* v. *"Americans United" Inc., supra,* at 762; *Bob Jones University* v. *Simon, supra,* at 745. Here as in *"Americans United" Inc., supra,* the employees will have a "full opportunity to litigate" their tax liability in a refund suit. 416 U. S., at 762. Even though the remitting of the employees to a refund action may frustrate their chosen method of bearing witness to their religious convictions, a chosen method which they insist is constitutionally protected, the bar of the Anti-Injunction Act is not removed:

> "[D]ecisions of this Court make it unmistakably clear that the constitutional nature of a taxpayer's claim, as distinct from its probability of success, is of no consequence under the Anti-Injunction Act." *Id.,* at 759.

See also *Lockerty* v. *Phillips,* 319 U. S. 182, 187 (1943). In *Bob Jones* we left open the question of whether injunctive relief as to future collection would be proper as a form of ancillary relief in a refund suit where the taxpayer prevailed on the merits, in order to avoid the necessity of continuous subsequent "backward-looking refund suits." 416 U. S., at 748 n. 22. That situation is not presented here since the employees have never brought a refund action, much less prevailed on the merits of such an action. Their joinder in the employer's successful refund action, based on the receipt of double payment by

the Government, would afford no basis for injunctive relief based on their constitutional claim. The injunctive relief granted by the District Court in this case is plainly at odds with the dual objectives of the Act: efficient and expeditious collection of taxes with "a minimum of pre-enforcement judicial interference," and protection of the collector from litigation pending a refund suit. *Bob Jones, supra,* at 736–737.[7]

The judgment of the District Court is reversed insofar as it enjoins the collection of taxes by the Government and the withholding of wages by the employer.

*Reversed in part.*

Mr. Justice Douglas, dissenting.

The sole question on the merits is whether the provision of the Internal Revenue Code, 26 U. S. C. § 3402, which requires employers to deduct and withhold from wages federal income taxes, is constitutional as applied to employees, who on religious grounds object to the withholding taxes on their salaries which represent that portion of the federal budget allocated to military expenditures.[1] They invoke the Free Exercise Clause of the First Amendment, as they are Quakers who are opposed to participation in war in any form and who claim that this method of collection directly forecloses their ability freely to

---

[7] Because we have concluded that the Anti-Injunction Act bars injunctive relief, we have not found it necessary to decide other threshold issues such as whether a three-judge District Court was required, whether the sovereign immunity of the United States barred the suit, and whether the requirements of 28 U. S. C. § 1331 were met.

[1] The District Court found that 51.6% was a reasonable estimate of the proportion of the federal budget expended for military and war purposes based on the appropriations made by Congress in the calendar year 1968, according to a computation by the Friends Committee on National Legislation.

express that opposition, *i. e.*, to bear witness to their religious scruples.

There is no evidence that questions the sincerity of the employees' religious beliefs. Nor is there any issue raised as to whether that religious belief would give the employees a defense against ultimate payment of the tax. The District Court held that the withholding was unconstitutional as to the employees, 368 F. Supp. 1176, a conclusion with which I agree.

The withholding process[2] forecloses the employees from bearing witness against the use of these monthly deductions for military purposes. Under the opinion of this Court, they are deprived of bearing witness to their opposition to war—these withheld portions of their salaries pay the entire tax and they therefore have "no alternative legal remedy," a circumstance which distinguishes both *Enochs* v. *Williams Packing Co.*, 370 U. S. 1, and *Bob Jones University* v. *Simon*, 416 U. S. 725.

Quakers with true religious scruples against participating in war may no more be barred from protesting the payment of taxes to support war than they can be forcibly inducted into the Armed Forces and required to carry a

---

[2] Objections to withholding are not restricted to Quakers. Some federal judges have passionately opposed the withholding of taxes on their salaries, not on the basis that the tax is unconstitutional as was once held (see *O'Malley* v. *Woodrough*, 307 U. S. 277, overruling *Miles* v. *Graham*, 268 U. S. 501), but rather on the ground that the loss of the use of the sums deducted during the year preceding the April 15 due date is a diminution of their compensation against the command of Art. III, § 1, which provides in part: "The Judges, both of the supreme and inferior Courts, shall hold their Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office." Whatever may be the merits of that contention, the command of the First Amendment permits of no exceptions, for it states: "Congress shall make no law . . . prohibiting the free exercise" of religion.

gun, and yet be denied all opportunity to state their religious views against participation. See *United States* v. *Seeger,* 380 U. S. 163. The Court misses the entire point of the present controversy. The employees are barred from protesting these monthly deductions under the Court's opinion. In *Enochs* v. *Williams Packing Co., supra,* and *Bob Jones University* v. *Simon, supra,* taxpayers sought to enjoin the collection of taxes by any means whatever, while the taxpayers litigated the question whether the taxes were due at all. Here the employees challenge the withholding law as depriving them of their one and only chance of contesting the constitutionality of the withholding of the tax as applied to them. So, unlike *Enochs* and *Bob Jones University,* there is no remedy by way of refund.[3]

The religious belief which the Government violates here is that the employees must bear active witness to their objections to their support of war efforts. Dr. Edwin Bronner, who qualified as an expert on the history of

---

[3] In *Bob Jones University,* the Court expressly stated: "This is not a case in which an aggrieved party has no access at all to judicial review. Were that true, our conclusion might well be different." 416 U. S., at 746. Similarly, in *Commissioner* v. *"Americans United" Inc.,* 416 U. S. 752, the Court examined at length the claim that the respondent there had "no alternative legal remedy," ultimately concluding that the claim was untrue since a refund action for FUTA taxes, while slow and unsatisfactory from the taxpayer's point of view, would still provide a forum in which judicial review of the legality of the actions of the IRS could be obtained. *Id.,* at 761–762.

In the present case, since the taxpayers do not claim that they are entitled to a refund (conceding that the Government could legitimately collect the tax by *some* method), a refund suit would be summarily dismissed without ever reaching the merits of their claim that the particular method of collection violated their free exercise rights. This situation appears, then, to fall squarely within the question left open in *Bob Jones University, supra;* the Court now apparently resolves that question *sub silentio.*

Quakerism, gave testimony which, as summarized by the District Court, 368 F. Supp., at 1178, stated: "[M]ost Quakers have considered it an integral part of their faith [4] to bear witness to the beliefs which they hold. It has always been the prevailing view that simple preaching of one's beliefs is not sufficient, and that one's actions must accord with and give expression to one's beliefs. Many of the employees of the AFSC, including particularly appellees' Cleveland and Cadwallader, share this belief, and for these employees, the operation of the withholding tax, which leaves them no option as to the payment of the taxes which they conscientiously question, operates as a direct abridgment of the expression and implementation of deeply cherished religious beliefs."

If we are faithful to the command of the First Amendment, we would honor that religious belief. I have not bowed to the view of the majority that "some compelling state interest" will warrant an infringement of the Free Exercise Clause. *Sherbert* v. *Verner*, 374 U. S. 398, 406–407; *Braunfeld* v. *Brown*, 366 U. S. 599, 603. I have previously dissented from that position and opposed amending by judicial construction the plain command of the Free Exercise Clause. See *Sherbert* v. *Verner, supra,* at 410–413; *McGowan* v. *Maryland*, 366 U. S. 420, 575–576; *Arlan's Department Store* v. *Kentucky*, 371 U. S. 218.

The Anti-Injunction Act, 26 U. S. C. § 7421 (a), is no barrier. No "assessment or collection of any tax" is restrained, only one method of collection is barred, the

---

[4] "Friends will ever be concerned to relate their religious insights to the realities of international life. Opportunities for courageous action and for the expression of invincible good will remain under any political system. Whatever the system and whatever the situation that calls for decision, Friends are called upon to make their witness." Faith and Practice, the Book of Discipline of the New York Yearly Meeting of the Religious Society of Friends 42 (1968).

Government being left free to use all other means at its disposal. Moreover, to construe the Act as the Court construes it does not avoid a constitutional question but directly raises one. The Act, read as literally as the Court reads it, plainly violates the First Amendment as applied to the facts of this case, for "no law" prohibiting the free exercise of religion includes every kind of law, including a law staying the hand of a judge who enjoins a law for the collection of taxes that trespasses on the First Amendment.

The power of Congress to ordain and establish inferior courts (*Lockerty* v. *Phillips,* 319 U. S. 182, 187) has not to this date been assumed or held to mean that Congress could require a federal court to take action in violation of the Constitution. Thus suspension of the writ of habeas corpus is restricted to "Cases of Rebellion or Invasion" where "the public Safety may require it." Art. I, § 9, cl. 2. And when it comes to the First Amendment and the free exercise of religion, the mandate is that "Congress shall make no law . . . prohibiting" it. The Anti-Injunction Act is a "law"; and the Constitution gives no such preference to tax laws as to permit them to override religious scruples. May Congress enact a law that prohibits a minister from preaching if his taxes are in arrears? Or that disallows the making of a protest to a tax assessment even though the assessment and payment violate one's religious scruples? Until today, I would have thought not. The First Amendment, as applied to the States by the Fourteenth, bars a tax on the conduct of a religious exercise by a minority even though that religious exercise is obnoxious to the majority. *Murdock* v. *Pennsylvania,* 319 U. S. 105. Dicta to the effect that an allegation of unconstitutionality is irrelevant under the Anti-Injunction Act (*Bailey* v. *George,* 259 U. S. 16, 20)—which the Court today elevates to a holding—were based on the premise that there

was an alternative remedy to the unconstitutional actions. Here, as demonstrated, there is no other remedy. A refund suit is of no value, since the religious scruples which these taxpayers invoke relate to their inability to protest the payment, not to the use of the taxes themselves for military purposes.

I would affirm the judgment below.